

RECEIVED

NOV 23 2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BARNEY LONZO ,  )
        Plaintiff,  )
          )      **1:22-cv-05369**
        Vs.  )    Honorable Judge Steven C. Seeger
          )    Magistrate Judge Young B. Kim
CHRISTOPHER OWEN ,  )
ABEL LEON ,  )
ROBERT BULTER ,  )
CITY OF CHICAGO ,  )
        Defendants .  )
          )

## *AMENDED COMPLAINT*

1. This claim is for Violations of Plaintiff's Civil and Criminal Rights as protected and enforced by the Constitution and Laws, Privileges and Immunities of the United States under 18 U.S.C. 371 ,18 U.S.C. 1341 , 18 U.S.C. 1961 and 42 U.S.C. Sec. 1981 , 1983 , 1985 , and 1986.

2. The Court has jurisdiction under 18 U.S.C. Sec. 1965 and 28 U.S.C. Sec. 1343 and 1367.

3. Pro se, Plaintiff; Barney (Boney) Lonzo, (Whom identify himself as Straight); is a United States Citizen and a resident of the State of Illinois and worked for the city of Chicago, from August 1987 A.D. to January 2014 A.D., Under various positions and titles .

4. Defendant Christopher Owen , (Openly Gay); is being sued individually and in his official capacity as city of Chiclago's First Deputy Commissioner, department of Human Resources. Now he's Commissioner of Human Resources.

5. Defendant Abel Leon , (Openly Gay) is being sued individually and his official capacity as city of Chicago's Lead Investigator.

6. Defendant Robert Bulter, (Openly Gay) is being sued individually and as an employee for the department of Aviation.

7. The city of Chicago is a Municipality and Plaintiffs' Federal Constitutional claims, as set out here in , are that defendants' ; practices, customs and policies, knowingly or unknowingly, did in fact violated one or more of his civil rights, by omissions of protection of laws, privileges, and his immunities afforded him.

8. .Plaintiff is informed and believes that the city of Chicago and the Department of Aviation received Millions of Federal monies and grants resources to operate and manage, that the defendant Owen's does in fact have control of, that plaintiff and other straight citizens have contributed into , as ;Tax dollars.

9. Plaintiff is informed and believes that Defendant Owen's and the city of Chicago has a duty to operate and not make policies and rules that allows discriminatory practices due to race, gender;and against straight individuals in the workplace.To use his position, as Commissioner, to harass and punish plaintiff due to his straight status and advance the LGBTQ life culture at the cost and peril of others.

10. Plaintiff is informed and believes that former city of Chicago Streets and Sanitation Commissioner Al Sanchez and co-defendant Aaron Delvalle were prosecuted in Federal District Court and found guilty in a Hiring Corruption Scheme. The charges arose out of the Hired Truck Scandal , first exposed by the Chicago Sun-times around the year of our Lord, 2004, A.D.

11. Plaintiff is informed and believes that Federal Prosecutor's said Sanchez had used his role overseeing 4,000 city of Chicago Jobs to build up the pro-Daley Hispanic Democratic Organization (HDO) , Sanchez made the scheme work because of his position as Commissioner and that left out qualified applicants, like plaintiff; with-out political connections of being hired or obtaining these Jobs.

12. Plaintiff contends that NO legal actions is made here against the Federal Prosecutors whom were derelict in their duties, obligation and responsibilities to safeguard the Citizens of Chicago, and also enjoy immunity, in that they failed to dismantle the bogus Hiring System in place at City Hall and it has become seven (7) times worse by defendant Owen than under Commissioner Al Sanchez.

13. Plaintiff is informed and believes that the Hiring System scheme operated by defendant Owen's has resulted in Deaths and Serious Injuries to other City of Chicago Employees and its Citizens.

14. Plaintiff maintains that the City of Chicago had a fiduciary duty and a legal responsibility to dismantle the bogus Hiring System that was established ,by then, Commissioner Al Sanchez, and not merely to go on as business as usual. Which allowed and covered up and protected the two-tier Disciplinary System, i.e.; One for Black Employees' ( at Will) and One for Whites Employees,' (Regular - Career Service Status), that deny and hinder redress for plaintiffs and others who were highly skilled and qualified without political clout. The latter being greater or more valued in status of the two..

15. Plaintiff maintains that he is a victim of the Hired Truck system scheme that allowed unskilled and unqualified (so called) Truck Drivers remain in place after the scheme was uncovered by the Federal Government. Plaintiff is informed and believes that approximately Eight Hundreds HDO Members benefited under the scheme and left in place, to this very DAY, under many Job titles and Jobs. Plaintiff is informed and believes that all highly qualified Truck Drivers would have to be fired and/or let go before One (1) unqualified (so called) Truck Driver ,hired through HDO, be discharged or fired.

16.. Plaintiff maintains that he has suffered as a result of the defendant's action and non-actions. Inter Alia,; i.e.; loss of employment, incarceration, loss of pension, even the amount the plaintiff contributed into the fund. Notwithstanding the fact that plaintiff has not been found guilty of any Criminal Charges. Plaintiff maintains that defendant Owen used the City of Chicago Resources , Unions Bidding System and U.S. Mail to further the bogus Hiring system scheme and retaliate against plaintiffs and advance the LGBTQ life culture

17. Plaintiff is informed and believes that Defendant Leon, conspired with Robert Butler, to Frame Plaintiff, to horn his lie's against him on numerous occasions at the Department of Aviation, late hours of the Evenings,. They did manipulate facts, evidence and testimony to allow the plaintiff to lose his job and be charged criminally. i.e.; Butler swore out a complaint with other locals.agencies stating that plaintiff begun Harassing him due to his Homosexually, around October of that Year,, But after Defendant Leon learned through me that I did not work in the same Department, with Defendant Butler until late December, Defendant Leon changed Dates to read," till the time I was transferred into the Aviation Department and have Defendant Butler drop the charges at the other agencies.

18.Plaintiff was charged with State Hate Crime, Unlawful Restraint against Defendant Butler under CR 14558. After the State Rested, Plaintiff received a Direct Judgment of Not Guilty on all Charges.

19. Plaintiff is informed and believes that after he was found Not Guilty in State Court, Defendant Owen brought him to Bear and to Answer the same Charges in his Arena, The Human Resources Disciplinary Hearing , in which Owen's controlled and had the last say so. Plaintiff maintains that the only difference, in his State Court Trial and the Disciplinary Hearing was Defendant Owen, he did not testify at the State Court Hearing, But had much to say about the manufactured Evidence at Plaintiff's Disciplinary Hearing. 2.) The standard of proof also changed from a Greater One to Lessor One, "Guilty Beyond a Reasonable Doubt", to "Preponderance of the Evidence". The latter allowed Defendant Owen to control, as Plaintiff and his legal counsel were not allowed to openly put on evidence and call witnesses during his Hearing. Witnesses were afraid of Retaliation by the City and the ones that did testify, on Plaintiff behalf, were in fact retaliated against by the City and found Employment elsewhere.


20. Plaintiff maintains that he was a "Pool Motor Truck Driver (MTD) Career Service Employee and not a Regular MTD Career Service Employee, the latter held by a lot of illegal, unskilled, unqualified MTD's being retain under the bogus scheme employed by Al Sanchez.

21. Plaintiff maintains that under his Career Service Status as a "New Hire" his Union Collective Bargaining Agreement afforded him privileges and immunities that the city of Chicago expressly set-forth in it's promulgated Personnel Rules, Consent Decrees, and Union Collective Bargaining Agreements and it's long standing customs and policies and regulations and rules, enjoyed by others under the equal protection clause. I.e. What's Good for the Goose, is Good for the Gander.

22. Plaintiff is informed and believes that on or about August 26, 2021, Plaintiff was invited for a Job interview with the city of Chicago, Department of Aviation for the position of " Pool Motor Truck Driver", when he was ordered to leave because Defendant's Owen Office declared that "Lonzo's on the Commission do not Hire List".

23. Plaintiff is informed and believes that notwithstanding the Commissioners' "Do Not Hire List," his Union Collective Bargaining Agreement affords him special privileges and immunities that expressly supersede the Personnel Rules and any policies, rules or regulations by the Commissioner, or anyone else, that continue any prior disciplinary actions after 18 months of it's being imposed.

24. Plaintiff is informed and believes that at his Department of Human Resources Disciplinary Hearing, the Department of Aviation employed two (2) out-side Lawyers AS Assistant Corporation Counsel. And once they were challenged at hearing, could not or would not produce any Documentations, giving them leave to act in the stead of the city of Chicago Corporation Counsel position.


25. Plaintiff is informed and believes that he's legally entitled to know by whom authorized are you persecuting me? Assistant Corporation Counsel are under special Oaths to server both the

City of Chicago's interest and that of its employees are under scrutiny by the city and they are well versed in the Collective Bargaining Agreements and its Language. And it could be now argued that Corporation Counsel chose not to pursue any Disciplinary Action subsequent to the acquittal in Trial Court of all Charges,(Coming from a Greater Standard of Proof to a Lesser Standard is a great undertaking but Aviation and Defendant Owen was not having it. Notwithstanding Plaintiff's Equal Protections Entitlements, I.e.;A set of Rules for Black Employees and another for White Employees that deny and hinder redress for Black Straight Plaintiffs and others like him. And it's not time Barred since it renews itself from the last occurrence, August 16, 2021,Inter Alia, till the last employee remains on the Job from the Hiring System Under Commissioner Al Sanchez, and till each time a white employee receives redress under the clause in which plaintiff is now being denied; each time defendant Owen take special interest of something that comes close to his domain and or courtyard, the countless Consent Decrees the City has entered into claiming not to violate (again) the rights of others BUT here we are.

26. Plaintiff is informed and believes that this Court has the authority to correct all of the injustices that has been inflicted upon him by the Defendants,i.e.; by remand back to the City,to correct the Discipline Procedural Rights,by remand back through the Illinois Courts to correct the standard of proof claim and other issues raised, By ordering the City to dismantle the bogus Hiring System, by punishing the Defendants for subjecting him and others in their continuation of the scheme.by restoring him to his employment and providing him with his loss wages and getting Plaintiff some needed help to over come from the PTSD he has suffered as a subsequent result of the trauma he has endured. And or do nothing, declare that the plaintiff has not overcome the litmus test and dismiss his complaint. (Plaintiffs maintain that the average Judge has seen more legal procedures,testimony, maneuvers than any three lawyers put together. So if a Rich man can pay his own filing fee and not have the Court scrutinize his claims at the outset he has a greater chance of winning his case or getting his day in court since his opposing counsel is not going to be as knowledgeable as the Court.) Although legal, The Court is doing the work of opposing counsel and making the process unfair.

27. No previous lawsuits have been filed regarding the same facts involved in this case, as expressed and set forth herein.

**WHEREFORE,** Plaintiff asks for the following relief:

A.     Remand case back to Illinois Courts to correct constitutional deficiencies incurred prior to commencement of subsequent charges regarding standard of proof. I.e.; a plaintiff or criminal defendant, does not lose his presumption of innocence and it's

privileges and immunities, as the charging party knows at outset that plaintiff was found Not guilty, but chose to utilize a lesser standard of proof , to get a second bite of the Apple,does not negate or overcome being found Not Guilty. I.e.; learned Corporation attorneys knew that burden was upon them , after the finding of Not Guilty, but if the commencement would have been first, the burden would have been on plaintiff to overcome.They chose not to get involved and defendants needed outside lawyers to further the crime and or scheme.

B.   Remand case back to City of Chicago,dismantle Hiring System established under commissioner Al Sanchz , remove all employees hired under HDO,as their employment was part of a scheme that injured plaintiff and others and the citizens of chicago. Provide the plaintiff with a Disciplinary Hearing afforded him under his Union Bargaining Agreement,reinstate his employment and provide for loss income and benefits .

C.   Remand to Federal prosecution  for further investigation and possible indictments of defendants under ROCI act regarding Hired Truck scheme by defendants and loss of life and injuries caused by unqualified (so-called) MTDs  Prosecute defendants of any crimes against plaintiff and other citizens.

D.  Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life and any other injuries inflicted by defendants and others; any other relief the COURT deems just and proper.

E.   Punitive damages against the city of Chicago, defendants, Owen and Leon,and such injunctive, declaratory, or other relief as may be appropriate, including attorney's fees and reasonable expenses as authorized by 42 U.S.C. Sec. 1988.

Plaintiff's signature: _____

Plaintiff's Name: _____ BARNEY (BONEY) LONZO

Plaintiff's mailing Address: ____ 4849 W CRYSTAL
Chicago, Illinois 60651

Plaintiff          BARNEYLONZO@GMAIL.COM

PLAINTIFF ATTACHMENTS AND EXHIBITS

# PLAINTIFF'S ATTACHMENTS AND COMPLAINT EXHIBITS.

1. Plaintiff's Exhibit #1, U.S. Department of Justice Announcement of City of Chicago's Commissioner Sanchez indicted on Hiring Fraud Charge. 1-7 pages.

2. Plaintiff's Exhibit #2, City of Chicago's Grievance form #08-09-088-0040, punishment of Plaintiff with out cause or reason and denial of Equal Protection. 1 page.

3. Plaintiff's Exhibit #3, Right to Sue Letter from U.S. Equal Employment Opportunity Commission. 1. page

4. Plaintiff's Exhibit #4, City of Chicago's Plaintiff's Job Work History. 4 pages.

5. Plaintiff's Exhibit #5, various pages from City of Chicago Rules, Personnel Rules setting forth enforceable entitlements to all employees. 1-4 pages.

6. Plaintiff's Exhibit #6, various documents regarding applying for City of Chicago's Pool Motor Truck Driver by Plaintiff on or about August 16, 2021. 1-7 pages.

7. Plaintiff's Exhibit #7, interview before EEOC, with attached Augments by Plaintiff. 1-8 pages

8. Plaintiff's Exhibit #8, transcript of City of Chicago Disciplinary Hearing regarding it's promulgated City Rule 6 (a) (2) which requires that the City of Chicago Corporation Counsel prosecute this matter. If it's not, An Assistant Corporation Counsel, than A Attorney be designated by the City of Chicago's Corporation Counsel. 1-4 Pages.

**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

*Patrick J. Fitzgerald*
*United States Attorney*

*Federal Building*
*219 South Dearborn Street, 5th Floor*
*Chicago, Illinois 60604*
*(312) 353-5300*

FOR IMMEDIATE RELEASE
THURSDAY MARCH 22, 2007
www.usdoj.gov/usao/iln

PRESS CONTACT:
Randall Samborn, AUSA/PIO   (312) 353-5318

### RETIRED STREETS AND SANITATION COMMISSIONER SANCHEZ
### AND SECOND CITY EMPLOYEE INDICTED ON HIRING FRAUD CHARGES

CHICAGO – A retired commissioner of the City of Chicago's Department of Streets and Sanitation and a Chicago police officer who has held various city jobs, both of whom were high-level leaders of the Hispanic Democratic Organization (HDO), a citywide political campaign organization, were indicted today on federal charges in connection with the ongoing investigation of city hiring and promotion fraud. The retired commissioner, **Alfred Sanchez**, a principal organizer for HDO, was charged with engaging in a systematic fraud scheme to provide city jobs, promotions and other employment benefits to induce and reward political campaign work. The second defendant, **Aaron Delvalle**, who assisted Sanchez in coordinating HDO activities and who received immunity from prosecution relating to this investigation, was charged with perjury for allegedly lying to the federal grand jury about his HDO activities.

Sanchez, 59, of Chicago, was charged with nine counts of mail fraud, and Delvalle, 34, of Chicago, was charged with one count of perjury in a 10-count indictment returned today by a federal grand jury. Both defendants will be arraigned at a later date in U.S. District Court.



The charges were announced by Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, together with Robert D. Grant, Special Agent-in-Charge of the Chicago Office of the Federal Bureau of Investigation; James Vanderberg, Special Agent-in-Charge of the U.S. Department of Labor Office of Inspector General in Chicago; and Kenneth T. Laag, Inspector-in-Charge of the U.S. Postal Inspection Service in Chicago.

The investigation of fraudulent city hiring and promotion practices stems from the federal investigation of corruption in the city's Hired Truck Program. Four previous defendants, including Robert Sorich, who was a high-ranking official in the Mayor's Office of Intergovernmental Affairs (IGA), were sentenced last year after being convicted of rigging city hiring and promotion practices to reward political campaign work. Sanchez and Delvalle are the 47th and 48th defendants, including more than 20 current or former city employees, who have been charged since January 2004. Forty-four defendants have been convicted, one is deceased, and the remainder are pending.

Sanchez was commissioner of Streets and Sanitation from June 1999 until he retired in June 2005, and was deputy commissioner from 1995 to 1999. The department has about 4,000 workers and is responsible for garbage collection, snow removal, street sweeping, rodent abatement, street lamp maintenance, graffiti removal, and tree trimming and planting. Before joining Streets and Sanitation, Sanchez worked in the city's Health Department and was the First Deputy Director of the Mayor's Office of Information and Inquiry (I&I), where he performed certain personnel duties in both of those departments.

Delvalle has been a city employee since April 1997, working at various times in I&I, Streets and Sanitation and the Chicago Police Department.



2

According to the indictment, Sanchez served as a principal organizer for HDO, which was formed in the early 1990s and had many city employees among its hundreds of individual participants who were active in political campaigns and voter outreach activities, and HDO was divided into geographic divisions. Sanchez was head of HDO Southeast, which had as many as 500 individual participants who performed political work on behalf of HDO-selected candidates during its peak years. Beginning in 1999, Delvalle assisted Sanchez in coordinating HDO Southeast activities.

Generally, specific political directives were disseminated through a hierarchical system in HDO Southeast, with Sanchez, typically through Delvalle, informing approximately six to eight "Political Coordinators," each of whom directed certain individual participants, as to the particular political assignments.

Sanchez alone was charged with engaging in a fraud scheme beginning no later than 1994 through early 2005. As part of the alleged scheme, Sanchez and uncharged co-schemers Individual A ( who was the overall leader of HDO), Robert Sorich, Jack Drumgould, Delvalle, Patrick Slattery, Roberto Medina and various other city employees and officials, engaged in the following conduct:

- ► while he was employed at I&I and Streets and Sanitation, Sanchez and certain co-schemers engaged in a systematic effort to provide public financial benefits, in the form of city jobs, promotions, and other employment benefits, in order to induce and reward campaign work to benefit HDO and other private political organizations;

- ► Sanchez and other co-schemers corrupted the city's personnel process by awarding city job-related benefits in non-policymaking positions to applicants selected by Sanchez and IGA officials by: falsifying and causing the falsification of ratings forms; signing and causing the signing of fraudulent *Shakman* certifications; and otherwise granting preferential treatment;

- ► in the case of "mass" hiring sequences, Sanchez negotiated a certain portion of the total available positions with IGA officials in order to award the positions to individuals selected by Sanchez on the basis of their work on



3

behalf of HDO. Applying political and other considerations, IGA selected the remainder of the candidates for the particular hiring sequence; and

►     the individual HDO Southeast participants who received job-related benefits included individuals who provided Sanchez with various personal services and things of value, including home repair work, snow removal, lawn care and yard work.

The indictment alleges that Delvalle, acting on Sanchez's behalf, informed individual HDO Southeast participants, including Political Coordinators, that requests for city job benefits be made through the individual's Political Coordinator. Such requests included requests for a) entry-level city jobs; b) promotions to other city positions; c) increased overtime opportunities; d) transfers to more desirable work locations; e) pay increases and f) other job benefits for themselves, family members and other favored individuals. In submitting requests to Sanchez and Delvalle, Political Coordinators often provided specific information regarding the HDO participant's level of political involvement.

The co-schemers allegedly tracked and maintained records relating to city job-related requests on behalf of HDO participants, and officials of HDO North and HDO South also submitted requests for city employment benefits at Streets and Sanitation to IGA officials and Sanchez on behalf of other HDO volunteers.

When he was an I&I official, Sanchez allegedly caused false and fraudulent ratings forms to be signed in order to favor his selections in the award of city job-related benefits. Sanchez and Medina, while at I&I, signed false and fraudulent *Shakman* certifications, attesting that political considerations played no role in I&I's hiring sequences, when in fact, they knew that certain hiring decisions were based, in substantial part, on the applicant's political participation.



4

At Streets and Sanitation, Sanchez and Drumgould allegedly caused certain individual HDO Southeast participants to become eligible to be interviewed for certain hiring sequences, even on occasions when the positions were closed to applications from the general public, and receipt of applications was not permitted under City hiring guidelines.

Sanchez allegedly directed Drumgould to take action on behalf of his selections in order to award city job-related benefits to those individuals, including awards relating to the following "mass" hiring and individual hiring sequences: 2004 General Foreman of Lineman, 2004 Career Service Laborer, 2004 Career Service Motor Truck Driver (MTD), 2003 Seasonal Laborer, 2002 Career Service MTD, 2002 Seasonal MTD and 2002 Lamp Maintenance Man.

As part of the alleged scheme, Sanchez also opposed the implementation of a lottery process for certain entry-level mass hiring sequences in order to retain his ability to influence the award of city job-related benefits to his selections.

According to the perjury count against Delvalle, on February 6, 2007 he was issued a letter of immunity, requiring his "complete, accurate and truthful" testimony before the grand jury. The letter explicitly informed Delvalle that if the United States Attorney's Office determined that he had violated any provision, or failed to give accurate and truthful information and testimony, then his statements could be used against him in a prosecution for perjury or false statements or other criminal proceedings. Delvalle, who was represented by an attorney, signed the immunity letter and acknowledged its terms, testified before the grand jury on February 8, 2007.

The indictment alleges that on February 8, 2007, Delvalle testified, among other things, as follows:

#1                                        5

Q:      And so whether it was termination issues or vacation issues or overtime or raises or promotions, I mean, you had no role in that part of [Streets and Sanitation], correct?

A:      Correct.

Q:      And you had no unofficial role either, correct?

A:      Correct.

Q:      And the entirety of your involvement as it related to coordinators or for that matter any individual people was getting names of people to check whether or not they made a lottery list?

A:      Correct.

* * * *

Q:      Other than the lottery list matters that we've discussed, okay, you have never made any attempt through official channels or unofficial channels to assist individuals with job-related benefits at Streets & Sanitation?

A:      No, sir.

The indictment alleges that Delvalle's testimony was false in that, he knew that:

▸      he participated in a process whereby HDO Southeast Political Coordinators, including HDO Southeast Political Coordinator A, submitted names of HDO participants to Delvalle and others in order to request and obtain job-related benefits on behalf of HDO participants;

▸      the process of job-related requests was not limited to Delvalle making inquiries concerning "lottery lists," but in fact included efforts to coordinate and facilitate requests made by individual HDO Southeast participants, for jobs, promotions and transfers in city employment; and

▸      Grand Jury Exhibit Delvalle 2 was not a document limited to inquiries concerning lottery lists.

The government is represented by Assistant U.S. Attorneys Manish Shah, Patrick Collins, Julie Ruder, Barry Miller and Philip Guentert.



If convicted, eight of the nine mail fraud counts against Sanchez carries a maximum penalty of 20 years in prison and a $250,000 fine, while a single count carries a maximum term of five years in prison. If convicted of perjury, Delvalle faces a maximum penalty of five years in prison and a $250,000 fine. The Court, however, would determine the appropriate sentence to be imposed.

The public is reminded that an indictment contains only charges and is not evidence of guilt. The defendants are presumed innocent and are entitled to a fair trial at which the government has the burden of proving guilt beyond a reasonable doubt.

# # # #



7

***City of Chicago***
***Employee Problem Form***

***(Labor/Trade Unions)***

Grievance No. 08-09-088-004

Date Filed 6.25.09

Employee Name: Barney Lonzo   SS# 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 Title code#7184

Department: Water /  Work Location: South District  / Work Phone

**STEP I**
Have you discussed this grievance with your immediate
supervisor?                    YES __X__           NO_____

**Statement of Grievances:**
On or about June 17, 2009, Grievant received a letter claiming that
he was a "pool motor truck driver and that he would be lay-off,
grievant contends that: Upon return from a lay off, grievant job
title and pay code were inadvertently changed to "Pool Motor
Truck Driver," NEW HIRE. Grievant has been Subsequently told
that the change is due to an August 25, 2005, disciplinary
discharge. Grievant contends that he was not provided a pre-
disciplinary hearing, or a disciplinary hearing, or a conference
regarding any alleged misconduct or incident on or about August
25, 2005. Grievant maintain and contends that a disciplinary
hearings was warranted to determinate the need for discipline.
Grievant contends and maintain that he received a lay-off letter on
August 25, 2005, and this letter contains the same language as the
pervious lay-off letters that grievant and others seasonal MTD's
have received.  Absent any disciplinary hearing to determinate if
discipline was warranted, the city cannot now claim that grievant
was discharged due to a disciplinary issue.





#3

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Chicago District Office
230 S Dearborn Street ,
Chicago, Illinois ,60604
(312) 872-9777
Website: WWW.EEOC.GOV

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Barney Lonzo
4849 West Crystal
Chicago, IL 60651

**Charge No:** 440-2022-01196

**EEOC Representative and email:** Janel Smith, Investigator
Janel.Smith@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice. Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2022-01196.

On Behalf of the Commission:

Digitally Signed By: Julianne Bowman on
8/16/2022

Julianne Bowman
District Director

**CC:** CITY OF CHICAGO

Please retain this notice for your records.



City of Chicago
Department of Human Resources
Records Management
10/11/2016

**EMPLOYEE
WORK HISTORY**



## HISTORY WAREHOUSE

| DATE | ACTION | TC | | DEPARTMENT | PAYROLL | ST | PAYRATE |
|------|--------|----|----|-----------|---------|----|---------|
| 12/01/1987 | 34-SAL CHNG | 2471 | CONSMR SRVC OFFCR I | CONSUMER SERV | 2840 | 0 | 1499.00 |
| 12/31/1987 | 67-SEP-CS | 2471 | CONSMR SRVC OFFCR I | CONSUMER SERV | 2840 | 0 | 1499.00 |
| 01/01/1988 | 11-APPT-CS | 1274 | PUBLIC VEHICLE INSPE | CONSUMER SERV | 2840 | 1 | 1571.00 |
| 05/19/1988 | 54-LOA-DDIS | 1274 | PUBLIC VEHICLE INSPE | CONSUMER SERV | 2840 | 1 | 1571.00 |
| 05/24/1988 | 21-REINS | 1274 | PUBLIC VEHICLE INSPE | CONSUMER SERV | 2840 | 1 | 1571.00 |
| 07/28/1988 | 82-AWOL | 1274 | PUBLIC VEHICLE INSPE | CONSUMER SERV | 2840 | 1 | 1571.00 |
| 12/23/1998 | 13-APPT-EX | 7183 | MOTOR TRUCK DRIVER | STREETS & SAN | 3452 | 9 | 21.40 |
| 05/25/1999 | 66-TERM-EX | 7183 | MOTOR TRUCK DRIVER | STREETS & SAN | 3452 | 9 | 21.40 |
| 12/01/1999 | 13-APPT-EX | 7183 | MOTOR TRUCK DRIVER | STREETS & SAN | 3452 | 9 | 21.40 |
| 04/14/2000 | 66-TERM-EX | 7183 | MOTOR TRUCK DRIVER | STREETS & SAN | 3452 | 9 | 21.40 |
| 12/01/2000 | 13-APPT-EX | 7183 | MOTOR TRUCK DRIVER | STREETS & SAN | 3452 | 9 | 21.40 |
| 01/19/2001 | 62-PROV DOCK | 7183 | MOTOR TRUCK DRIVER | STREETS & SAN | 3452 | 9 | 21.40 |
| 01/22/2001 | 22-REAPPT | 7183 | MOTOR TRUCK DRIVER | STREETS & SAN | 3452 | 9 | 21.40 |
| 08/01/2002 | 39-TRANSFER | 7183 | MOTOR TRUCK DRIVER | TRANSPORTN | 3439 | 9 | 25.90 |





City of Chicago
Department of Human Resources
Records Management
10/11/2016

**EMPLOYEE
WORK HISTORY**



LONZO, BARNEY

| | |
|---|---|
| **TITLE** | 7184-POOL MOTOR TRUCK DRIVER |
| **A/I** | INACTIVE |
| **DEPT** | 085- DEPARTMENT OF AVIATION |
| **PAYROLL** | 3904 |
| **STATUS** | CAREER SERVICE |
| **BU** | 08-STATE AND MUNIC TEAMSTRS LOC 700 |

## ASSIGNMENT HISTORY

| TITLE | DEPT | BU | ST | A/I | ACTION | FROM | TO |
|---|---|---|---|---|---|---|---|
| 7183-MOTOR TRUCK DRIVER | 084 | 08 | 9 | ACTIVE | | 08/01/2002 | 03/30/2003 |
| 7183-MOTOR TRUCK DRIVER | 084 | 08 | 9 | SUSP | SEASONAL TERMINATION | 03/31/2003 | 04/15/2003 |
| 7183-MOTOR TRUCK DRIVER | 084 | 08 | 9 | ACTIVE | REHIRE | 04/16/2003 | 11/15/2003 |
| 7182-MOTOR TRUCK DRIVER-HR AGREEMENT 2 HR | 081 | 08 | 9 | ACTIVE | REHIRE - PAID AS | 11/16/2003 | 08/15/2004 |
| 7183-MOTOR TRUCK DRIVER | 084 | 08 | 9 | ACTIVE | REHIRE | 08/16/2004 | 09/02/2004 |
| 7183-MOTOR TRUCK DRIVER | 084 | 08 | 9 | LOA | LOA - DUTY DISABILITY | 09/03/2004 | 09/09/2004 |
| 7183-MOTOR TRUCK DRIVER | 084 | 08 | 9 | ACTIVE | REINSTATEMENT FROM LEAVE | 09/10/2004 | 11/30/2004 |
| 7183-MOTOR TRUCK DRIVER | 081 | 08 | 9 | ACTIVE | REHIRE | 12/01/2004 | 12/31/2004 |
| 7182-MOTOR TRUCK DRIVER-HR AGREEMENT 2 HR | 081 | 08 | 9 | ACTIVE | YEAR END POSITION UPDATE | 01/01/2005 | 03/01/2005 |
| 7182-MOTOR TRUCK DRIVER-HR AGREEMENT 2 HR | 081 | 08 | 9 | ACTIVE | CORRECTION | 03/02/2005 | 03/31/2005 |
| 7183-MOTOR TRUCK DRIVER | 081 | 08 | 9 | ACTIVE | ACTIVITY CHANGE | 04/01/2005 | 08/24/2005 |
| 7183-MOTOR TRUCK DRIVER | 081 | 08 | 9 | TERM | | 08/25/2005 | 10/01/2006 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 0 | ACTIVE | APPOINTMENT - POOL ASSIGNMENT | 11/16/2006 | 03/31/2007 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 0 | SUSP | RETURN TO THE POOL | 04/01/2007 | 05/22/2007 |

-3



City of Chicago
Department of Human Resources
Records Management
10/11/2016

**EMPLOYEE
WORK HISTORY**



## ASSIGNMENT HISTORY

| TITLE | DEPT | BU | ST | A/I | ACTION | FROM | TO |
|-------|------|-----|-----|-----|--------|------|-----|
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 0 | SUSP | SUPERVISOR CHANGE | 05/23/2007 | 05/31/2007 |
| 7184-POOL MOTOR TRUCK DRIVER | 088 | 08 | 0 | ACTIVE | APPOINTMENT - POOL ASSIGNMENT | 06/01/2007 | 08/28/2008 |
| 7184-POOL MOTOR TRUCK DRIVER | 088 | 08 | 0 | LOA | LOA - DUTY DISABILITY | 08/29/2008 | 10/08/2008 |
| 7184-POOL MOTOR TRUCK DRIVER | 088 | 08 | 0 | ACTIVE | REINSTATEMENT FROM LEAVE | 10/09/2008 | 10/16/2008 |
| 7184-POOL MOTOR TRUCK DRIVER | 088 | 08 | 0 | ACTIVE | CORRECTION | 10/17/2008 | 11/15/2008 |
| 7184-POOL MOTOR TRUCK DRIVER | 088 | 08 | 1 | ACTIVE | STATUS CHANGE | 11/16/2008 | 11/20/2008 |
| 7184-POOL MOTOR TRUCK DRIVER | 088 | 08 | 1 | ACTIVE | CORRECTION | 11/21/2008 | 12/31/2008 |
| 7184-POOL MOTOR TRUCK DRIVER | 088 | 08 | 1 | ACTIVE | YEAR END POSITION UPDATE | 01/01/2009 | 07/15/2009 |
| 7184-POOL MOTOR TRUCK DRIVER | 088 | 08 | 1 | SUSP | RETURN TO THE POOL | 07/16/2009 | 11/15/2009 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | ACTIVE | APPOINTMENT - POOL ASSIGNMENT | 11/16/2009 | 12/31/2009 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | ACTIVE | YEAR END POSITION UPDATE | 01/01/2010 | 03/31/2010 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | SUSP | RETURN TO THE POOL | 04/01/2010 | 10/03/2010 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | ACTIVE | APPOINTMENT - POOL ASSIGNMENT | 10/04/2010 | 12/31/2010 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | ACTIVE | CORRECTION PROCESS | 01/01/2011 | 03/31/2011 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | SUSP | RETURN TO THE POOL | 04/01/2011 | 11/13/2011 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | ACTIVE | APPOINTMENT - POOL ASSIGNMENT | 11/14/2011 | 03/15/2012 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | SUSP | RETURN TO THE POOL | 03/16/2012 | 04/01/2012 |
| 7184-POOL MOTOR TRUCK DRIVER | 084 | 08 | 1 | ACTIVE | APPOINTMENT - POOL ASSIGNMENT | 04/02/2012 | 11/30/2012 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | ACTIVE | TRANSFER | 12/01/2012 | 11/05/2013 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | INACTIVE | DISCIPLINARY SUSPENSION | 11/06/2013 | 11/09/2013 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | ACTIVE | REINSTATEMENT | 11/10/2013 | 01/27/2014 |
| 7184-POOL MOTOR TRUCK DRIVER | 085 | 08 | 1 | TERM | | 01/28/2014 | **CURRENT** |

## SALARY HISTORY

| SALARY | EFFECTIVE | ACTION |
|--------|-----------|--------|
| 25.90 | 8/1/02 | |
| 25.90 | 11/16/03 | REHIRE - PAID AS |



City of Chicago
Department of Human Resources
Records Management
10/11/2016

**EMPLOYEE
WORK HISTORY**

## SALARY HISTORY

| SALARY | EFFECTIVE | ACTION |
|---|---|---|
| 23.32 | 11/16/06 | APPOINTMENT - NEW HIRE |
| 23.32 | 6/1/07 | APPOINTMENT |
| 26.24 | 11/16/07 | SCHEDULED CHANGE |
| 26.96 | 1/1/08 | COST OF LIVING ONLY |
| 27.63 | 7/1/08 | COST OF LIVING ONLY |
| 30.70 | 11/16/08 | SCHEDULED CHANGE |
| 32.95 | 7/1/09 | COST OF LIVING ONLY |
| 33.85 | 7/1/10 | COST OF LIVING ONLY |
| 33.85 | 4/2/12 | REHIRE |
| 33.85 | 12/1/12 | REHIRE |

## ABSENCE HISTORY

| START DATE | END DATE | REASON |
|---|---|---|
| 1/19/01 | 1/21/01 | DISCIPLINARY SUSPENSION |
| 9/3/04 | 9/9/04 | LOA - DUTY DISABILITY |
| 8/29/08 | 10/8/08 | LOA - DUTY DISABILITY |
| 11/6/13 | 11/9/13 | DISCIPLINARY SUSPENSION |

## TERMINATION HISTORY

| Termination Reason | Termination Date - Actual |
|---|---|
| TERMINATION DISCIPLINARY | 8/24/05 |
| TERMINATION DISCIPLINARY | 1/27/14 |

## HISTORY WAREHOUSE

| DATE | ACTION | TC | | DEPARTMENT | PAYROLL | ST | PAYRATE |
|---|---|---|---|---|---|---|---|
| 06/01/1987 | 11-APPT-CS | 2471 | CONSMR SRVC OFFCR I | CONSUMER SERV | 2840 | 0 | 1426.00 |

## DISCLAIMER

*Nothing in the City of Chicago's Personnel Rules is intended to create any property interests in any job or position for any employee. The City of Chicago recognizes that employees with career service status or rights under a collective bargaining agreement may have due process rights under the existing law; however, the City of Chicago Personnel Rules are not intended to create such property rights. The City of Chicago Personnel Rules are meant as a guide to the current policies and procedures used by the City of Chicago with respect to its employees and are subject to change by the City of Chicago unilaterally and at any time. The City of Chicago does not intend that its Personnel Rules, whether provided to employees at the time of employment, after commencement of employment, or at any other time, or through any manner of dissemination, constitute part of any offer of employment or are otherwise the basis for the formation of any contract, whether expressed or implied. These Rules should not be interpreted expressly or by implication as evidence of the existence of an employment contract between the City of Chicago and any employee. The City of Chicago Personnel Rules may be applied to employees who are either at-will or career service employees unless the language in a particular Rule specifically states that it only applies to career service employees. Career service employees and/or those covered by collective bargaining agreements have no right to continued employment based on the city's Personnel Rules but may have such rights as are granted under the applicable laws or collective bargaining agreements. Nothing in the City of Chicago Personnel Rules is intended to change the status of an at will employee. Any at-will employee may be discharged without notice, for any reason or no reason, and an at-will employee has no expectation of continued service.*

**City of Chicago Personnel Rules; Page (1)- Disclaimer. (Revised June 20 2014) (Emphasis Added).**

# #5

## *Discrimination Prohibited*

The City of Chicago, through its Human Rights Ordinance, and the Diversity and Equal Employment Opportunity Policy ("EEO Policy"), prohibits discrimination based on race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, and military service or discharge status.

## *Section 2 - Harassment Prohibited*

The City of Chicago prohibits harassment based on race, color, sex, gender identity, age, religion, disability national origin, ancestry, sexual orientation, military service or discharge status. The City of Chicago, through its Human Rights Ordinance and EEO Policy also prohibits sexual harassment which means any unwelcome sexual advance or request for sexual favors or conduct of a sexual nature when submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or receipt of City services; or when submission to or rejection of such conduct by an individual is used as the basis of an employment or service decision affecting the individual; or when such conduct has the purpose or effect of substantially interfering with the work performance of an employee or creating an intimidating, hostile or offensive work environment.



No person should be required to endure sexual harassment by supervisors or coworkers or work in a hostile work environment.

## Section 3 - Retaliation Prohibited

It is a violation of this rule, the City's Equal Employment Opportunity Policy and City ordinance to retaliate against or harass any person who asserts his or her rights regarding employment discrimination by: 1) opposing discriminatory practices in the workplace; 2) complaining about conduct prohibited by this policy; 3) complaining to, cooperating with or assisting the Department of Human Re:sources's Diversity and EEO Division , or individual City departments in resolving a complaint of discrimination. Actions taken against an employee or applicant which materially affect the terms and conditions of employment and which may be considered retaliatory, include but are not limited to: refusal to hire, denial of promotion or job benefits, discipline in excess of an oral reprimand, demotion, suspension, or discharge.

## Retaliation Prohibited –Section 3

It is a violation of this rule, the City's Equal Employment Opportunity Policy and City ordinance to retaliate against or harass any person who asserts his or her rights regarding employment discrimination by: 1) opposing discriminatory practices in the workplace; 2) complaining about conduct prohibited by this policy; 3) complaining to, cooperating with or assisting the Department of Human Resource's Diversity and EEO Division , or individual City departments in resolving a complaint of

#5

discrimination. Actions taken against an employee or applicant which materially affect the terms and conditions of employment and which may be considered retaliatory, include but are not limited to: refusal to hire, denial of promotion or job benefits, discipline in excess of an oral reprimand, demotion, suspension, or discharge.

#5

## RULE V - EQUAL EMPLOYMENT OPPORTUNITY

The City of Chicago is an Equal Employment Opportunity employer and is committed to providing equal employment opportunity in its hiring, promotions, and transfers. The City of Chicago follows all applicable federal, state, and local laws and ordinances prohibiting discrimination. Section 1 - Discrimination Prohibited The City of Chicago, through its Human Rights Ordinance, and the Diversity and Equal Employment Opportunity Policy ("EEO Policy"), prohibits discrimination based on race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, and military service or discharge status.

## *Harassment Prohibited*

*The City of Chicago prohibits harassment based on race, color, sex, gender identity, age, religion, disability national origin, ancestry, sexual orientation, military service or discharge status. The City of Chicago, through its Human Rights Ordinance and EEO Policy also prohibits sexual harassment which means any unwelcome sexual advance or request for sexual favors or conduct of a sexual nature when submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or receipt of City services; or when submission to or rejection of such conduct by an individual is used as the basis of an employment or service decision affecting the individual; or when such conduct has the purpose or effect of substantially interfering with the work performance of an employee or creating an intimidating, hostile or offensive work environment. No person should be required to endure sexual harassment by supervisors or coworkers or work in a hostile work environment.*



Dear Barney Lonzo:

Thank you for applying online for the position of POOL MOTOR TRUCK DRIVER, 7184-CDA–DSS-2021 with the City of Chicago. Your application was successfully submitted.

Once the posting period closes, the Recruitment Staff will be reviewing your application to confirm that you meet the minimum qualifications for the positions and will generate a referral list of the best qualified candidates for the position.

If you are placed on the referral list, you will be contacted by the hiring department to participate in the next steps in the hiring process which could include a test and/or interview. Notification to participate in the next steps of the hiring process typically occurs 4 to 6 weeks after the closing of the job posting period.

Thank you for your interest in employment with the City of Chicago.

If you have any questions, please feel free to contact us via phone at (312) 744-4976 or via e-mail at HumanResources@cityofchicago.org

The Department of Human Resources.

#6

# BARNEY LONZO

barneylonzo@gmail.com

July 24, 2021

City of Chicago

RE: Pool motor truck driver, 7184-CDA-DSS-2021, [DateJuly 8, 2021]

Dear Director of Human Resources,

Please accept this letter as an expression of my interest in the Pool motor truck driver position. I am a highly motivated and progress-focused Career motor truck driver with a long-standing background in this industry. With a track record of initiative and dependability, I have devised strategic initiatives which I believe will prove valuable again to the City of Chicago.

Throughout the course of my career, I have perfected my driving skills and abilities. I am a capable and consistent problem-solver skilled at prioritizing and managing projects with proficiency.

In my previous roles as Motor Truck Driver, I contributed . Whereas, I was disciplined and discharged from Employment with the City of Chicago and subsequent following a criminal trial in which I was vindicated by a criminal court judge (after prosecution put on its best case , I didn't even have to put on a defense and the judge found me NOT GUILTY , to the basis of the city's termination) . In accordance with my collective bargaining agreement; the city can't maintain my name on its do not hire list, it's against the law and it's retaliation against me because it's been a period of time over (18) months since the incident in which I was terminated and acquitted in the criminal court system. ThereFore,  this discipline should  not be used as the basis of any further discipline action , or me seeking employment with the City Of Chicago. The people's whom accused  me of wrongdoing in that incident are no longer employees of the City of Chicago.

My previous experience working as Career motor truck driver for City of Chicago , Street

1



& Sanitation, gave me a wealth of good knowledgeable truck driver snow operate experience. I have an excellent track record of attendance and safety and major job accomplishments .

I have been out of the field for a time due to some unexpected issues.rising my kids, In January 27, 2014, I was supporting two girl and one was a one year old baby and she's seven (7) today thank God and in need of good medicine insurance and a dad that can continue to support her and her sister and their dreams. Everything with me has been taken care of , I have found JESUS and am a new man and I am ready to get back into the workforce and do my part to make this a better city and I would be open to elaborate more if you have further questions!

Please take a moment to review my attached resume and credentials. I would greatly appreciate the opportunity to speak with you regarding my candidacy.

Thank you for your consideration.

Sincerely,
Barney Lonzo



2



# BARNEY LONZO

7736340045
barneylonzo@gmail.com
4931 West Hirsch St.,
Chicago, Illinois 60651   United
State of American

## PROFESSIONAL SUMMARY

Industrious and dedicated Truck Driver with over 25 , years of experience transporting City personnel and equipment safety with in City Of Chicago. Focused on meeting delivery schedules to promote dedicated Bus service .Safety-conscious with clean CDL license with endorsements.

## SKILLS

- Trailer maintenance
- Delivery scheduling
- Safe driving
- Logistics planning

## EXPERIENCE

**Seasonal Motor Truck Driver , Pool Motor Truck Driver, Career Motor Truck Driver ., City of Chicago ,** Nov 1999 - Jan 2014, Chicago, Il
Operate snow plows, operate garbage truck,  vector trucks  and other Water Department equipment and transport personal to job work locations, operate employees Bus on scheduled stop in department of Aviation.

## EDUCATION

Jun 1982

GED
**Illinois GED** - Joliet, Illinois



## <u>THIS IS THE ONLY OPPORTUNITY TO PARTICIPATE IN THE ROAD TEST</u>





**Your Road Test appointment is:**

Date:          Thursday, August 26, 2021

Time:          12:00 p.m. (You will be road tested at the time of your scheduled appointment)

Location:      Department of Aviation

#6

From: AV-HRSeasonalHire AV-
HRSeasonalHire@cityofchicago.org
Subject: CITY OF CHICAGO DEPT. OF
AVIATION - EXTERNAL APPLICANT
ROAD TESTING
Date: Aug 20, 2021 at 10:55:01 AM

Dear Pool MTD Applicant:



This letter serves as written notification that you are being contacted by the **Department of Aviation** to participate in our Road Test for the Pool Motor Truck Driver (2 Hour Assignment) position. **THIS IS NOT A JOB OFFER.**

**Please bring your valid Commercial Driver's License (CDL) with no Air Brake (L) restriction (CLASS X/P) AND Social Security Card** with you to your scheduled Road Test appointment. If you do not have your Social Security Card, you can bring either your passport or birth certificate.

**#6**

**Failure to bring proper identification will forfeit your opportunity to participate in the Road Test.**

Dear Pool MTD Applicant:

**(PLEASE READ THIS EMAIL IN ITS ENTIRETY)**

This letter serves as written notification that you are being contacted by the **Department of Aviation** to participate in our Road Test for the
Pool Motor Truck Driver (2 Hour Assignment) position.  **THIS IS NOT A JOB OFFER.**

**Please bring your valid Commercial Driver's License (CDL) with no Air Brake (L) restriction (CLASS X/P) AND Social Security Card** with you to
your scheduled Road Test appointment. If you do not have your Social Security Card,
you can bring either your passport or birth certificate.



EEOC Letter of Barney Lonzo; Scheduled interview for EEOC Inquiry 440-2022-01196.

February 24, 2022; @ 3:00p.m. (312-520-0216), upload/mailed/ Fax enclosed document prior to interview to make interview more productive and efficient, as Petitioner's issues are complicated and complex.

Now comes Barney Lonzo and ask the EEOC to file a complaint on his behalf for violations of his Rights Under the U.S. Constitution against the City of Chicago, Greenbery Trauring, LLP; Christopher Owen, First Deputy, City of Chicago, Department of Human Resources; Abel Leon, HR Department. EEO and VIW Investigator for the City of Chicago.

## Allegation #1, Department of Aviation:

On or about, Thursday, August 26, 2021, the Department of Aviation put out for bid, it's online Position of Pool Motor Truck Driver, 7184-CDA-DSS-2021, with the City of Chicago. Petitioner's application was successfully submitted and accepted; See attached Petitioner's exhibit #1.

On said date, Petitioner was invited to participate in a Road Test and completing additional application documents in securing the posted Bid.

Petitioner was ordered to stop his application and directed to leave the grounds because he was on a "do not hire list "by first Deputy


# 7

**Commissioner Christopher Owen of the City of Chicago Human Resources Department.**

Petitioner contends that he never received any notice that he was being placed on a "do not hire list" and that his Collective Bargaining Agreement prohibits any additional disciplinary action after (18) months period. It has been 8 years since being discipline by the city of Chicago and said additional disciplinary actions by the city is barred since it is after the 18-month period.

Petitioner was informed that his relationship was terminated with the Union by the head of the Department of Aviation HR as she demanded that I leave the testing facility at the Department of Aviation. And that I had no continuous standing rights after losing my job and therefore was ineligible for rehire now. **See attached Petitioner's Work History, which out-line his tenure with the city.**

Petitioner maintains that on June 17, 2009, the city of Chicago has listed him as an "NEW HIRE", his eight (8) years prior seasonal History with the city of Chicago for alleged misconduct and incidents of disciplinary actions against his were render null and void since the city laws were being applied ex post facto here. In short, the masting of information by the city relied upon to terminated him at hearing in 2014, were before the June 17, 2009. The "New Hired" date barred any per-employment period before his "New Hired" status applicable by ex post facto provisions, at a critical time in petitioner employment history, in which seasonal employees were not afforded any kind of disciplinary hearings **to determinate if discipline was warranted.**
Petitioner maintains that seasonal employees **were not afforded a pte.**



d) Derogatory, sexual comments.
e) Verbal Threats.
f) HR staff hiding gay coworkers non-accountable for their inappropriate conduct in the workplace.
g) HR staff violating federal and state laws to accomplice their wicked agendas. USC 18 sec 241.

Allegation # 3, Review by the Hearing Officer, the Administrative Review Board, the Trial Court and any subsequent State reviewing Courts that heard this matter were not full and fair and were ***arbitrary and capricious and that of the Will of Christopher Owen.*** He is the first Deputy Commissioner of the Department of Human Resources of the city of Chicago.

Lonzo contends that he could not make these claims if he were not acquitted of all the State charges first against him in ***Barney Lonzo v. State of Illinois; (13 CR 14558-01).***

***The first things that were attached to the city of Chicago HR Hearing files were the completed acquitted transcripts of the State law Charges that the City now were prosecuting under administrative proceedings.***

Any subsequent reviewing as a matter of procedure or discretion became a bias towards the accused. Since the City knew that the accused was acquitted and found not guilty beyond a reasonable doubt, from the outset, and the proper standard of ***proof applicable to discipline and discharge proceedings, including those where conduct that might constitute a crime is charged, is "guilty beyond a reasonable doubt" and not the preponderance of the evidence standard',*** the accused never lose the" presumption of innocence" by substantial of lessor standard of proof by tier of fact. And the State Appellate Court, who made clearly erroneous law, findings of fact,



Constitutional Rights and Special Oaths and Pledges as a conditional of their repetition as "Special Assistant Corporation Counsel". So outside hired Attorneys, are not bound by these safeguards and duties, oaths and pledges and only concerns are to Win by any means necessary and not to safeguard any rights or privileges the accused has with the city of Chicago.

Accused is informed and believes that the Corporation Counsel was contemplating the complexing of his case, i.e., accused was acquitted first of all State charges, without lowering the standards and overlooking the rights of the accused, when the Department of Aviation took it upon themselves to hire GreenBerg Trauring, LLP, to violate his Rights and Privileges Under the Constitution of the United States. Accused maintains that he was denied the Equal Protection of the Federal, State and Local laws due to his race and gender.

The accused contains that mere appearance letter before Administrative Hearing, does not establish "Authority to Represent the City of Chicago. Everyone fills an appearance form out before any city of Chicago Administrative Hearing even pro se litigants. the accused contains that Corporation Counselor would not because they are agents of that Court but anyone else moving under their authority must disclose their legal holding, when challenged.

The accused maintains that the city of Chicago is a corporation which has designated Corporation Counselor, that can assign, "Special Assistant Corporation Counsel to conduct legal matters with their authority and blessings. *However, the different city departments cannot hire attorneys because some departments don't have budgets*



#7.

*that allow them to hire attorneys to do their lobbying, and legal side litigations. Any citizen of the City of Chicago can challenge the spending of their tax's dollars outside of the normal operations of business operation, at hearings, and courts and under the freedom of information act under everything else.* Notwithstanding, the State Appellate Court, findings that the accused lacks standing to assert by "whom authority does, GreenBerg Trauring, LLP; prosecute the accused'.

The accused contends that the State Appellate Court demands that only selected individuals be afforded selective privileges of U.S. of American. When it writes that "Even assuming Kuykendall was correctly decided, its *holding would not apply to Administrative proceedings*, where the City is not required to present sufficient to sustain a criminal conviction." *The proper standard of proof applicable to discipline and discharge proceedings, including those where conduct that might constitute a crime is charged, is the preponderance of the evidence standard.*"

## IN CLOSING SUMMARY

The accused maintains that he had already been Acquitted in State Court of the charges that the City of Chicago was attempting to bring against him in an Administrative Hearing. By lowering the standard of proof, the accuse contends that he been denied the Equal Protection of the Laws, and subject to Double Jeopardy by the Courts Ruling. Same is furthered demonstrated when you consider that the Evidence which



unsupported by evidence, making flawed rulings on evidence that stifle one sides rights, showing bias towards the accused, i.e., The state court argues that (Lonzo) was not to be believed, after he claimed that the second incident never occurred (June 23) _**and after the witness Trailor and Butler alleged it happen and that there were more people who witnessed the alleged incident on their scheduled day off**_. The accused maintains that Mr. Butler was never held accountable for his conduct and language towards him. Why is Mr. Butler above the law and the accused not entitled to the equal protection of the law? Mr. Butler alleged and filed a sworn verified complaint alleging that I begun harassment him due to his sexual orientation in October but after I showed investigators that I never gotten to that Department until late December. _**They were allowed to change report to read that from March 1, 2013, through July 23, 2013, on one or more dates there-in, the accused discriminated against Robert Lee Butler due to his sexual orientation. Mr. Butler stop pursuing the sworn verified complaint made with the Chicago**_ Commission on Human Relations because when he claimed the harassment begun, the accused was not in the same Department with him.

Allegation #, 5. By whom Authority does GreenBerg Trauring, LLP; has to prosecute the accused as "Special Assistant Corporation Counsel" as outside appointed Attorneys?

The accused maintains that Department of Aviation were not permitted to hire outside Lawyers to prosecute their legal matters after they were challenged at his Administrative Hearing.

The accused maintains that City of Chicago, Corporation Counsel has a duty to safeguard the rights of all city employees involved in litigation with the city of Chicago, they must consider the employee's Collective Bargaining Agreements, the city of Chicago's Personnel Rules and



the city of Chicago used to Terminate the accuse, was taken before his "New Hire Status". And he argues that its ex po facto and Null and voids his illegal discharge. This matter is furthered not sanctions by city of Chicago corporation counsel which render it too null and void. No city Departments can hired lawyers that overlook city Employees' Rights afforded them by their Collective Bargaining Agreements, and by city of Chicago's HR Personnel Rules, etc.

**#7**



ESQUIRE

800.211.DEPO (3376)
EsquireSolutions.com

TRANSCRIPT OF PROCEEDINGS
IN THE MATTER OF: BARNEY LONZO

8

March 07, 2017

1   our right to come back another day to rebut any
2   evidence that we haven't seen after we've had an
3   opportunity to review the evidence that Mr. Lonzo
4   refused to give us.
5           We also respectfully ask that because it
6   is opposing counsel that has caused that delay, the
7   time between those two hearings should not count
8   towards any backpay the Department will have to pay
9   Mr. Lonzo if the Board ultimately reinstates him.
10          Thank you.
11          THE HEARING OFFICER:  Mr. Flaxman.
12          MR. FLAXMAN:  Thank you.  The argument that the
13  purpose of civil discovery is to have a level
14  playing field would be a good argument to start out
15  with in the Circuit Court of Cook County or in
16  another court.  We are not in court.  We are in an
17  administrative agency which has promulgated its own
18  rules for discovery and for representation.
19          Rule 6(a)(2) requires that the
20  representative of the City of Chicago if it's not
21  assistant corporation counsel be someone designated
22  by the corporation counsel.
23          As of this date there has been nothing
24  submitted to this tribunal indicating that



ESQUIRE DEPOSITION SOLUTIONS
800.211.DEPO (3376)
EsquireSolutions.com

1    Ms. Fordyce and her co-counsel have been designated
2    by the corporation counsel.
3             It would be very easy to produce
4    something, a document, signed by the corporation
5    counsel saying I hereby designate Ms. Fordyce to
6    represent the City of Chicago in this proceeding.
7    We haven't gotten that.
8             As of right now there's nothing in this
9    record to show that the attorneys purporting to
10   represent the City have, in fact, been designated by
11   the corporation counsel.  That would be a very
12   simple deficiency to cure if, in fact, there is a
13   document saying -- signed by the corporation counsel
14   or his designee saying you guys are designated.
15            THE HEARING OFFICER:  As officers of the court,
16   shouldn't that be a position to rely on the fact
17   that they are making the representation and from a
18   more realistic situation, why would they hold
19   themselves out as special assistant corporation
20   counsels if they weren't so designated, because they
21   wouldn't get paid?
22            MR. FLAXMAN:  As far as we know on this record,
23   a low-level official in the department has told
24   Ms. Fordyce and her colleagues to come here and



```
 1    represent the City.
 2         As far as we know, the corporation
 3    counsel themselves know nothing about this alleged
 4    litigation.  If it would be very simple for there to be
 5    a piece of paper signed by the corporation 'or
 6    someone authorized by them to say I hereby designate
 7    you people to represent the City of Chicago.
 8         We don't have that.  We should not have
 9    to rely upon rules that are not applicable to this
10    proceeding because this is not a court.  This is an
11    administrative proceeding.
12         THE HEARING OFFICER:  Stop right there.  What
13    rule are you referring to?  If you're referring to
14    civil procedure rules, that's one thing.  If your
15    argument is they don't have the authority to act on
16    their behalf, again, I take the position that they
17    filed an appearance on that.  They are representing
18    that they have the authority to do so.  If they want
19    to -- I'll give them leave if they haven't done so
20    sometime during the proceedings if they wish to get
21    a letter from the corporation counsel to put it in
22    the record so that that issue is completely
23    resolved, I would let them do that, but I'm not
24    going to delay going forward with this if it's not
```



TRANSCRIPT OF PROCEEDINGS
IN THE MATTER OF: BARNEY LONZO

March 07, 2017

11

```
 1    necessary.
 2         As an initial matter, if need be, I
 3    suppose we could take testimony from Ms. Dever, who
 4    is in charge of the labor employment division that
 5    can testify as to her knowledge as to this.  But
 6    we're not going to continue the matter based on
 7    that.
 8         MR. FLAXMAN:  I did not request we continue the
 9    matter.  I think that all of the proceedings before
10    Your Honor will be void unless there is some
11    designation that's -- by the corporation counsel
12    that's been created before we start this hearing.
13    I think if we proceed without a formal
14    designation from the corporation counsel, the City
15    is in peril being represented by someone who has not
16    been formally designated.  I haven't raised that as
17    grounds to continue the motion.  I made my point.
18         THE HEARING OFFICER:  Your point is made.  I've
19    suggested what possibly could be done.  It's the
20    City's case how they wish to proceed.  I don't know
21    if they have something or they don't.  At this point
22    it's noted.  That's not a grounds, in my mind, to
23    make a ruling relative to the request to produce the
24    documents.
```

ESQUIRE DEPOSITION SOLUTIONS
800.211.DEPO (3376)
EsquireSolutions.com